UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARET FRANKLIN-CHOMAS, an individual, on behalf of herself and all other individuals,<br><br>                    Plaintiff,<br><br>v.<br><br>INTERNET REFERRAL SERVICES, LLC; RED DOG MEDIA, INC.; TICKET FULFILLMENT SERVICES, L.P.; and VIVID SEATS INC.,<br><br>                    Defendants. | Case No.: 3:24-cv-02320-L-DDL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION; DENYING MOTION TO STAY; AND DENYING MOTION TO DISMISS**<br><br>[ECF No. 26.] |

Pending before the Court is Defendants Internet Referral Services, LLC ("IRS"); Red Dog Media, Inc. ("Red Dog"); Ticket Fulfillment Services, L.P. ("TFS"); and Vivid Seats Inc.'s ("Vivid Seats," collectively "Defendants"), motion to compel arbitration and dismiss or stay litigation, or alternatively, dismiss. (ECF No. 26.) Plaintiff Margaret Franklin-Chomas ("Plaintiff") opposed (ECF No. 34), and Defendants replied (ECF No. 37). Each party initially lodged their moving and opposition briefs with redacted sections alongside a motion to seal, which the Court subsequently denied. (ECF No. 38.) Each

1

party refiled the sealed briefs. (ECF Nos. 39, 40, 41.) The Court decides the matter on the papers submitted without oral argument. *See* Civ. L. R. 7.1(d.1). For the reasons set forth below, Defendants' motion to compel arbitration is granted in part and denied in part, their motion to stay is denied, and motion to dismiss is denied.

## A.  BACKGROUND

Plaintiff brings this action against Defendants after buying a ticket for the Lakeside Rodeo, taking place on April 22, 2022, from the website Tickets-Center.com (the "Website").[1] The Website is a ticket resale marketplace. Plaintiff alleges that the Website and its advertising on search engines contain misrepresentations that lead consumers to believe they are buying tickets from the actual venue instead of resale tickets. Plaintiff alleges that once on the Website, Defendants lead consumers to believe that tickets are limited and almost sold out when they are not, enabling them to charge a premium. Plaintiff also alleges that some of the tickets sold on the Website, including the ones that she bought, are either counterfeit or never actually provided to the consumer.

According to Plaintiff's allegations, IRS owns and operates the Website in conjunction with Red Dog. Red Dog "manages" the Website, including creating, maintaining, and operating it. TFS is a wholly owned subsidiary of Vivid, and the Website is operated through a Vivid platform by and through TFS. Additionally, Vivid, by and through TFS, manages, processes, and verifies all ticket sales and handles all customer service for the Website.

Plaintiff brings suit against Defendants for: (1) unfair and deceptive practices in violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (2) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (3) violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof.

---

[1]   All background facts, unless otherwise noted, are taken from the complaint. (ECF No. 1.)

Code §§ 17500, *et seq*.; (4) violation of the Ticket Resale Law, Cal. Bus. & Prof. Code §§ 22500 *et seq*.; (5) common law fraud; and (6) unjust enrichment.  Defendants jointly filed the instant motion seeking to compel arbitration and stay or dismiss the case, or alternatively, to dismiss the case.

### B.  MOTION TO COMPEL ARBITRATION

Defendants move to compel arbitration pursuant to the terms of Plaintiff's purchase agreement.  Plaintiff opposes the motion.

#### 1.  Contractual Provisions

When Plaintiff purchased the ticket, she checked a box indicating that she understood and agreed to the "Terms & Privacy Policy" (the "Terms").[2]  (ECF No. 16-2 ("Landier Decl.") ¶ 19.)  The Terms were available via a hyperlink next to the box Plaintiff checked and contained an arbitration clause and class-action waiver.  (*Id*.)  The first paragraph contained the following language, noted in bold and all capitals.

Please review these Terms carefully:

IMPORTANT: THESE TERMS CONTAIN A MANDATORY ARBITRATION PROVISION THAT, AS FURTHER SET FORTH BELOW, REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES. THIS MEANS THAT YOU (AS WELL AS THE BELOW NAMED COMPANY AND VENDOR) ARE EACH GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT OR IN CLASS ACTIONS OF ANY KIND. IN ARBITRATION THERE IS NO JUDGE OR JURY AND THERE IS LESS DISCOVERY AND APPELLATE REVIEW THAN IN COURT.

(*Id*. ¶ 16.)  Further down the Terms provided more details about arbitration and class actions:

**23. Dispute Resolution:**

---

[2] Neither party provided the full text of the Terms.  Defendants provided excerpts in the Landier Declaration.

> **23.1 Arbitration and Waiver of Trial by Jury:** You, on the one hand, and Company and Vendor, on the other hand, each agree that any and all disputes, controversies, or claims arising out of or relating to: (i) these Terms; (ii) your use of or access to this Website; (iii) Company's and Vendor's services; or (iv) any tickets or other items viewed through this Website shall be resolved exclusively through final and binding arbitration in Chicago, Illinois, rather than in court. SPECIFICALLY, YOU HEREBY AGREE TO WAIVE ALL RIGHTS AND CLAIMS TO A TRIAL BY JURY. The Federal Arbitration Act governs the interpretation and enforcement of these Terms to arbitrate. . . . The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability or of [Sic] these Terms, including, but not limited to, any claim that all or any part of this agreement to arbitrate on these terms is void or voidable. The arbitrator will decide the substance of all claims in accordance with the laws of the state of Illinois. The arbitrator's award will be final and binding, and judgment on the award rendered by the arbitrator may be entered in a court having jurisdiction thereof.

(*Id*. ¶ 17.) The arbitration clause also contained an opt-out provision: "If you do not wish to be bound by this agreement to arbitrate, you must notify us in writing within thirty (30) days after the date that you first accessed this Website." (*Id*.) The first paragraph of the Terms, set forth in all caps, together with Paragraph 23 of the Terms are hereafter referred to as the "Arbitration Agreement" or "Agreement."

## 2. Legal Standard

The parties agree that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq., governs Defendants' motion to compel arbitration. Under the FAA, a district court determines, (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).[3]

---

[3] Internal citations and quotation marks may be removed unless otherwise noted.

In opposing Defendant's motion, Plaintiff argues that the arbitration agreement is invalid under California law, and that Vivid and Red Dog cannot enforce the agreement. Defendants contend that the Agreement covers all Defendants, that the issue whether the agreement is enforceable was delegated to the arbitrator, and that the agreement is not invalid under California law.

"[A]rbitration is fundamentally a matter of contract." *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011). "To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003). If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

"[G]ateway issues of arbitrability presumptively are reserved for the court." *Momot*, 652 F.3d at 987. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Even though judicial resolution, not arbitration, is presumptive forum for disputes about arbitrability, "parties may agree to delegate them to the arbitrator." *Momot*, 652 F.3d at 987. "A delegation clause is a clause within an arbitration provision that delegates to the arbitrator gateway questions of arbitrability, such as … whether the arbitration provision is enforceable at all." *Caremark LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022).

"Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019).

### 3. The Delegation Clause

As a threshold issue, the Court must first determine whether the Arbitration Agreement delegates the authority to decide issues of arbitrability to the arbitrator. A court must determine whether the underlying agreement "clearly and unmistakably" delegated the questions of arbitrability to the arbitrator. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract ... even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein, Inc.*, 586 U.S. at 65.

The Arbitration Agreement provides that:

> The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability or of these Terms, including, but not limited to, any claim that all or any part of this agreement to arbitrate on these terms is void or voidable.

(Landier Decl. ¶ 17.) This provision clearly contemplates delegating the issue of arbitrability to the arbitrator. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (clear and unmistakable delegation when the arbitration agreement authorized the arbitrator to "decide issues relating to the 'enforceability, revocability, or validity of the Arbitration Provision'"); *see also Momot*, 652 F.3d at 988 (clear and unmistakable delegation when the contract authorized the arbitrator to decide "the validity or application of any of the provisions of" the arbitration clause). Accordingly, the issue of arbitrability of the claims is delegated to the arbitrator for all parties who can enforce the arbitration agreement.

### 4. Enforceability as to IRS and TFS

When arbitrability is clearly and unmistakably delegated to the arbitrator, a court must enforce that delegation clause "in the absence of some other generally applicable contract defense, such as fraud, duress, or unconscionability." *Mohamed*, 848 F.3d at

1209; *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). Plaintiff does not contend that any of these exceptions apply to the delegation clause. Plaintiff also does not contend that IRS and TFS are not parties to the Terms & Privacy Policy.

Plaintiff argues that Defendants waived their right to delegate arbitrability to the arbitrator by arguing that the Arbitration Agreement is valid under California law. However, in their motion to compel, Defendants argue that "if the parties entered into a valid agreement to arbitrate that delegates the question of arbitrability and other issues to an arbitrator—the Court *must* compel arbitration." (ECF No. 26 ("Mot.") at 14.) Further, they argue that "there can be no dispute that the arbitration agreement applies—including to the threshold question of arbitrability." (*Id*. at 17.) That Defendants also argue in the alternative that the arbitration agreement is valid under California law does not waive the issue of delegation. Accordingly, as to IRS and TFS, the Court must compel arbitration for all issues, including the issue of arbitrability.

### 5. Enforceability for Vivid and Red Dog

Defendants argue that Vivid Seats is a party to the Terms, and that, regardless. both Vivid Seats and Red Dog can compel arbitration under equitable estoppel, agency, and third-party beneficiary theories. The Court will consider each of these arguments in turn.

First, the parties disagree whether Vivid Seats is a party to the Terms. The Terms identify four parties: "you," who is the consumer, the "Company," which is IRS, the third-party ticket resellers, who are not relevant here, and the "Vendor" (Landier Decl. ¶ 17.) Both parties agree that TFS is a "Vendor," but Defendants also argue that Vivid Seats is included as a "Vendor." As the party seeking to compel arbitration, the burden is on Vivid Seats to prove it is a "Vendor" and therefore a party to the Agreement. *See Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012) ("The party seeking arbitration bears the burden of proving the existence of an arbitration agreement.").

       Vivid Seats points to Plaintiff's CLRA demand letter, which refers to both Vivid Seats and TFS as the "Vendor." (ECF No. 26-4, Ex. 1 ("Vivid [Seats], through its subsidiary TFS, is the vendor for and operates the website.")) It also points to the complaint, which states that "Vivid [Seats], by and through TFS, manages, verifies, and processes, all ticket orders," and "Vivid [Seats], by and through TFS, ensures fulfillment of all ticket orders, including delivery of tickets." (Compl. ¶¶ 30-31.) Neither Plaintiff's counsels' inadvertent statement (*see* ECF No. 34 ("Response") at 14), nor allegations in the complaint are evidence that Vivid Seats is the "Vendor." Accordingly, Vivid Seats has not met its burden to show it is a party to the Arbitration Agreement.

       Alternatively, Plaintiff argues Vivid Seats's definition of "Vendor" is contradictory to the Terms, which identify the "Vendor" as "a third-party," not third-parties. Plaintiff also points to the declaration of Bryce Landier, the President and CEO of Red Dog, who stated that

> Neither Red Dog nor Referral Services sells tickets to users. Instead, the Website provides information about tickets offered by third-party ticket resellers for various live events, concerts, and shows. This information is supplied to the Website by a third-party vendor, Defendant Ticket Fulfillment Services, L.P. ("TFS").

(Landier ¶ 4.) Landier also states that "[t]he Terms & Privacy Policy expressly identify and explain the functions of the Website operated by Referral Services and of the checkout webpage hosted and operated by the vendor and Referral Services," and that "Referral Services has a contract with TFS." (*Id.* ¶¶ 5-6.) Based on the Landier declaration, Plaintiff argues that TFS is the singular "Vendor" in the Terms. If Defendants wanted Vivid Seats to be a party to the Terms, including the Arbitration Agreement, they could have easily defined both TFS and Vivid Seats as the "Vendor," yet they choose not to. Accordingly, Vivid Seats cannot compel arbitration as a party to the Agreement.

Second, Vivid Seats and Red Dog argue that they are entitled to enforce the Arbitration Agreement under the doctrine of equitable estoppel. "A litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013). Under California law of equitable estoppel, a non-signatory may compel arbitration of a signatory's claims where "the claims [are] intertwined with the contract providing for arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1047 (9th Cir. 2009). As "generally only signatories to an arbitration agreement are obligated to submit to binding arbitration, equitable estoppel of third parties in this context is narrowly confined." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013).

Defendants argue that Plaintiff's claims "hinge entirely on the order through the Website that triggered the Terms & Privacy Policy…" (Mot. at 18.) The Court disagrees. Plaintiff's claims are not "intimately founded in and intertwined" with the underlying contract obligations in the Terms. *See Murphy*, 724 F.3d at 1230. Plaintiff does not bring contractual claims against Defendants, but false advertising, fraud, and unfair competition claims. While Plaintiff's "claims on some abstract level require the existence of the [Terms], the law is clear that this is not enough for equitable estoppel." *Id.* (finding customer agreement was not the basis for fraud claims and so equitable estoppel does not apply); *see also Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (rejecting equitable estoppel where the "statutory claims that are separate from the contract itself").

Third, Vivid Seats and Red Dog argue that they are entitled to enforce the arbitration agreement through an agency relationship. In California,

> A nonsignatory to an agreement to arbitrate may be required to arbitrate, and may invoke arbitration against a party, if a preexisting confidential relationship, such as an agency relationship between the nonsignatory and

9

3:24-cv-02320-L-DDL

> one of the parties to the arbitration agreement, makes it equitable to impose the duty to arbitrate upon the nonsignatory.

*Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co.*, 129 Cal.App.4th 759, 765 (2005). "Agency requires that the principal maintain control over the agent's actions." *Murphy*, 724 F.3d at 1232; *see also DeSuza v. Andersack*, 63 Cal.App.3d 694, 699 (1976) ("The right of the alleged principal to control the behavior of the alleged agent is an essential element which must be factually present in order to establish the existence of agency, and has long been recognized as such in the decisional law.").

Defendants argue that Plaintiff's allegations that "Red Dog is the 'manager' of IRS," and that "all IRS business is handled by Red Dog," is sufficient to show an agency relationship between IRS and Red Dog. (citing Compl. ¶¶ 24, 25.) Defendants further argue that Plaintiff's allegations that "TFS is a wholly-owned subsidiary of Vivid [Seats]" and "information on the Website is supplied by Vivid [Seats], by and through TFS, and Vivid [Seats], by and through TFS, hosts and operates the webpage that provides checkout services for the Website" is sufficient to show an agency relationship between TFS and Vivid Seats. (citing Compl. ¶¶ 29, 24.)

However, a wholly owned subsidiary is not automatically an agent of its parent without a further showing of full control of the subsidiary by the parent. *See Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 541 (2000). Further, none of the allegations show the requisite control to establish an agency relationship. *See Murphy*, 724 F.3d at 1232.

Finally, Vivid Seats and Red Dog argue they are entitled to enforce the Arbitration Agreement as third-party beneficiaries. In California, "[e]xceptions in which an arbitration agreement may be enforced by or against nonsignatories include where a nonsignatory is a third[-]party beneficiary of the agreement." *Nguyen v. Tran,* 157 Cal.App.4th 1032, 1036 (2007). However, it is not enough that a third party benefits from the contract, "the parties to the contract must have expressly intended that the third

party would benefit." *Murphy*, 724 F.3d at 1234. Defendants have presented no evidence that Plaintiff, who wished to buy a ticket to the rodeo, expected or intended unnamed third parties to benefit. While IRS and TFS may have intended Vivid Seats and Red Dog to benefit, the contract itself must show "clear intent" that all of the parties intended for the third parties to benefit. *See GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, Nat. Ass'n*, 671 F.3d 1027, 1033 (9th Cir. 2012). Accordingly, Vivid Seats and Red Dog cannot use this exception to compel arbitration.

As Vivid Seats and Red Dog are unable to show under any theory that they can enforce the Terms as non-parties, the motion to compel arbitration is denied as to them.

### C. **MOTION TO STAY**

Defendants argue that if, as the Court holds, all Defendants cannot enforce the arbitration agreement, the Court should stay the case pending arbitration to avoid piecemeal litigation. The Court has the discretionary authority to stay remaining claims pending the outcome of an arbitration proceeding. *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 21 n. 23 (1983). However, this is not the case where a court compels arbitration of certain claims against one defendant and retains jurisdiction over other claims against the same defendant. Under such circumstances, efficiencies may be gained by a stay. *See United States ex rel. Newton v. Neumann Caribbean Int'l*, Ltd., 750 F.2d 1422, 1427 (9th Cir. 1985). Even if this Court were to stay adjudication of Plaintiff's claims against Vivid Seats and Red Dog, the results of the arbitration proceedings against IRS and TFS would not be binding against Vivid Seats and Red Dog. *See Cal. Crane Sch., Inc. v. Google LLC*, 621 F. Supp. 3d 1024, 1033-34 (N.D. Cal. 2022) (denying motion to stay non-arbitrable claims in part because the parties will need to litigate claims regardless of what happens in the arbitration and any findings of fact or law in the arbitration are not binding on the court). Accordingly, Defendants' motion to stay is denied.

### D. MOTION TO DISMISS

#### 1. Subject Matter Jurisdiction

Defendants filed a motion to dismiss for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (noting that, "[b]ecause standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss"). Such a motion can be facial in nature or factual. *Pride v. Correa*, 719 F.3d 1130, 1139 (9th Cir. 2013). Where a factual attack is made and a court considers only written materials, a plaintiff need only establish a prima facie case of jurisdiction. *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1981).

For Article III standing, a plaintiff must show: (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of (i.e., traceability), and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "[A] plaintiff must demonstrate standing separately for each form of relief sought," *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185 (2000) – "whether it be injunctive relief, damages or civil penalties." *Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007).

Defendants argue that Plaintiff has failed to show injury in fact for purposes of Article III standing because she ultimately received a refund from her credit card company for the rodeo tickets. Plaintiff alleges that she "paid more for the ticket than she otherwise would have, and would only have been willing to pay less, or unwilling to purchase it at all, absent the misleading representations." (Compl. ¶ 59.) This is sufficient to allege economic injury. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012) (When "Plaintiffs contend that class members paid more for [a product] than they otherwise would have paid, or bought it when they otherwise would

not have done so" they have suffered an Article III injury in fact). Further, that Plaintiff was refunded by her credit card company does not undermine her standing. Even "the temporary loss of use of one's money constitutes an injury in fact for purposes of Article III." *Van v. LLR, Inc.*, 962 F.3d 1160, 1164 (9th Cir. 2020). Accordingly, Defendants' motion to dismiss for lack of Article III standing is denied.

### 2. Failure to State a Claim

Alternatively, Defendants filed a Rule 12(b)(6) motion to dismiss for failure to state a claim. A Rule 12(b)(6) motion tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Therefore, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a Rule 12(b)(6) motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, a court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

### a. Statutory Standing

Defendants argue that Plaintiff lacks statutory standing for their CLRA, UCL, and FAL claims because she received a refund from her credit card company. That Plaintiff

> may ultimately be unable to prove a right to damages (or, here, restitution) does not demonstrate that it lacks standing to argue for its entitlement to them. The doctrine of mitigation, where it applies, is a limitation on liability for damages, not a basis for extinguishing standing. This is so because mitigation, while it might diminish a party's recovery, does not diminish the party's interest in proving it is entitled to recovery.

*Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 789 (2010). Accordingly, Plaintiff has statutory standing for her CLRA, UCL, and FAL claims.

### b. Consumer Confusion

Relying on the disclaimers on their Website, Defendants next argue that no reasonable consumer would be misled. Plaintiff alleges three main categories of misrepresentations. First, Plaintiff alleges that Defendants' "advertising … lead[s] consumers to believe that they are visiting the actual ticket site for the venue where the event is taking place." (Compl. ¶ 2.) Second, she alleges that "Defendants further entice them to purchase tickets by misrepresenting that the tickets are limited or almost sold out when such statements are false or misleading." (*Id.* ¶ 3.) Third, she alleges that "[i]n many instances, the tickets that Defendants 'sell' are counterfeit or are never actually provided." (*Id.* ¶ 5.)

To dispute Plaintiff's claims, Defendant offers screenshots that purportedly represent the Website the day Plaintiff viewed and purchased her tickets. These screenshots are not part of Plaintiff's complaint, but Defendants argue that they can nevertheless be considered in the motion to dismiss. (*See* Mot. at 18 n.5.)

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) ...." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). However, "a court may take

judicial notice of matters of public record," *id.* at 999, and of "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. Of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002); *see also* Fed. R. Evid. 201.  A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).

Plaintiff challenges the authenticity of Defendants' screenshots.  Plaintiff notes that some of the screenshots are dated in August of an unknown year, but Plaintiff purchased her tickets in April of 2022.  (Response at 27.)  Further, Plaintiff notes that Defendants' screenshots are small snippets of the Website and therefore cannot be viewed in context.  (*Id.*)  The Ninth Circuit has warned that "use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery."  *Khoja*, 899 F.3d at 988.  At this stage, it would be improper to dismiss Plaintiff's claims based on contested screenshots.  Defendants' arguments which rely on the screenshots are therefore rejected.

### c.    Ticket Resale Law

Finally, Defendants argue that Plaintiff's reliance on the Ticket Resale Law is unavailing because the Website displays data from a platform for third-party ticket sellers and Defendants themselves are not ticket sellers.  The Ticket Resale Law makes it "unlawful for a ticket seller to represent that he or she can deliver or cause to be delivered a ticket at a specific price or within a specific price range and to fail to deliver within a reasonable time or by a contracted time the tickets at or below the price stated or within the range of prices stated."  Cal. Bus. & Prof. Code § 22502.2.  The statute defines a "ticket seller" as "any person who for compensation, commission, or otherwise sells admission tickets."  *Id.* § 22503.  The law also provides that "[i]t shall be unlawful for a

15

3:24-cv-02320-L-DDL

ticket seller to contract for the sale of tickets or accept consideration for payment in full or for a deposit for the sale of tickets unless …. [t]he ticket seller has a written contract to obtain the offered ticket at a certain price from a person in possession of the ticket or from a person who has a contractual right to obtain the ticket from the primary contractor." *Id*. § 22502.1.

Plaintiff argues that the language of section 22502.1 contemplates a ticket marketplace like the Website as an "intermediary between the person in possession of the ticket [and] the purchaser of the ticket." (Response at 31.) Plaintiff argues that the allegation that "Defendants receive a commission and/or compensation for every ticket sold on their website," (Compl. ¶ 125) fits within the statutory definition of ticket sellers.

Based on Plaintiff's allegation, Defendants could plausibly qualify as a ticket seller under section 22502.1 as Plaintiff alleges that consumers pay Defendants directly for the tickets, and consumers receive the tickets in a digital form directly from Defendants. (*Id*. ¶¶ 126-128.) Therefore, unlike a forum where buyers and sellers directly deal with each other, Plaintiff allegedly bought the tickets from Defendants as an intermediary. Accordingly, Defendants' motion to dismiss the Ticket Resale Law claim is denied.

### C.   CONCLUSION

For the reasons stated above, it is ordered as follows:

1. Defendants' motion to compel arbitration is granted as to the claims asserted against Internet Referral Services, LLC and Ticket Fulfillment Services, L.P. In all other respects, their motion to compel arbitration is denied.

2. Defendants' motion to stay is denied.

3. Defendants' motion to dismiss is denied.

//
//
//
//

**IT IS SO ORDERED.**

Dated: October 14, 2025

Hon. M. James Lorenz
United States District Judge